## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KEVIN ORTEGEL,
                    Appellant,

            v.

NATIONAL AERONAUTICS AND
    SPACE ADMINISTRATION,
                    Agency.

DOCKET NUMBER
DC-0432-15-0715-I-1

DATE: January 3, 2017

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Nathaniel D. Johnson</u>, Esquire, White Plains, Maryland, for the appellant.

<u>Bryan R. Diederich</u>, Esquire, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal for unacceptable performance pursuant to 5 U.S.C. chapter 43.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision. Because we agree with the administrative judge's finding that the appellant did not make any whistleblowing disclosures protected under 5 U.S.C. § 2302(b)(8), we MODIFY the initial decision to VACATE the administrative judge's alternate finding that the agency proved by clear and convincing evidence that it would have removed the appellant in the absence of his alleged protected disclosures.

## BACKGROUND

¶2        The appellant served as a GS-15 Workplace Planning Program Specialist in the agency's Office of Human Capital Management. Initial Appeal File (IAF), Tab 5 at 22. On July 8, 2014, the appellant was issued a performance plan for the 2015 performance year, indicating that he would be evaluated based on four critical elements. *Id.* at 183. By letter dated October 23, 2014, his supervisor, the Division Director, notified him that he was performing at an unacceptable level for two of the four critical elements of his position: "Labor Pricing Program Manager; Center labor pricing study" (critical element 3), and "Workforce planning and human capital reports—standard and ad hoc" (critical element 4). *Id.* at 203-04. His supervisor placed him on a 12-week performance improvement plan (PIP) to provide him an opportunity to raise his performance.

*Id.* at 202. The PIP letter set forth specific tasks to perform and deliverables to submit at the end of the PIP period. *Id.* at 205.

¶3        At the conclusion of the PIP, the Division Director determined that, based on a review of the appellant's deliverables, his performance remained unacceptable. *Id.* at 102. On February 9, 2015, the Division Director issued the appellant a notice of proposed removal based on his unacceptable performance in the two elements noted as deficient in his PIP. *Id.* at 93-100. Following the appellant's oral and written replies to the notice, the appellant's second-line supervisor issued a decision letter imposing his removal effective May 9, 2015. *Id.* at 22, 24-26.

¶4        The appellant filed this appeal, challenging the removal and raising an affirmative defense of whistleblower reprisal based on his disclosures concerning the potential for manipulating the employee viewpoint survey (EVS) online tool and alleged inconsistencies in his second-line supervisor's congressional testimony. IAF, Tab 1. The administrative judge held a hearing and issued an initial decision affirming the agency's removal action and denying the appellant's affirmative defense. IAF, Tab 84, Initial Decision (ID). The administrative judge found that the agency proved all of the elements for taking a performance-based action under 5 U.S.C. chapter 43. ID at 3-18. He further found that the appellant failed to establish by preponderant evidence that either of his alleged whistleblowing disclosures were protected disclosures under 5 U.S.C. § 2302(b)(8) and, alternatively, that the agency established by clear and convincing evidence that it would have taken the same personnel action in the absence of the alleged disclosures. ID at 18-22.

¶5        The appellant has filed a petition for review, contending that the administrative judge erred in finding that the agency proved all of the elements required to support a chapter 43 action and in failing to find whistleblower reprisal. Petition for Review (PFR) File, Tab 3. The agency has filed a response

in opposition, PFR File, Tab 5, to which the appellant has replied, PFR File, Tab 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6 To prevail in an appeal of a performance-based removal under chapter 43, the agency must establish the following by substantial evidence: (1) the Office of Personnel Management (OPM) approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards were valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010). Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p).

¶7 On review, the appellant argues that the agency failed to meet its burden regarding elements 1, 3, and 4. PFR File, Tab 3 at 14-27. In doing so, he claims that the administrative judge failed to make explicit credibility findings and "ignored" certain evidence supporting his theory of the case. *Id.* As discussed below, we have considered the appellant's arguments and discern no reason to disturb the administrative judge's findings.[2]

---

[2] The appellant does not object to the administrative judge's findings that the agency established the second and fifth elements, and we find no reason to disturb those findings.

OPM approved the agency's performance appraisal system.

¶8      The appellant argues that the three-tier rating system applied to him (i.e., "Substantially Exceeds Expectations," "Meets Expectations," and "Fails to Meet Expectations") was a significant change to the agency's prior five-tier system (used until the 2012-13 performance cycle) and was never approved by OPM. *E.g.*, PFR File, Tab 3 at 4-5, 16-17; IAF, Tab 5 at 189-200. We agree with the administrative judge's finding that the three-tier rating system was within the parameters of the performance appraisal system that had been approved by OPM. ID at 4-6. As correctly noted by the administrative judge, the performance appraisal system approved by OPM in 1996 was a "framework-type overview" similar to the one discussed in *Salmon v. Social Security Administration*, 663 F.3d 1378, 1384 (Fed. Cir. 2011), and not a "detailed implementation." ID at 5. OPM approved a system providing for employee performance plans that use a minimum of two levels to appraise each critical element but did not require a specific number of levels to be used. IAF, Tab 5 at 237, 240. Because the three-tier rating method under which the appellant was reviewed was consistent with the OPM-approved appraisal system, we find that the change to three-tier ratings for each element was not a significant change in the system requiring additional OPM review. *See Salmon*, 663 F.3d at 1384.

The appellant's performance standards were valid.

¶9      The appellant asserts that the administrative judge erred in finding that the three-tier appraisal policy announced in the 2013 personnel bulletin validly superseded an agency procedural requirement and that the agency intended for the policy to extend beyond the 2013-14 performance year. PFR File, Tab 3 at 17; IAF, Tab 10 at 41. We agree with the administrative judge that the agency's use of the three-tier appraisal method was valid. ID at 8-9. The agency Human Resource Specialist who drafted the 2013 personnel bulletins testified that the agency uses them as a tool to memorialize changes in policy pending updates in the agency's national procedural requirements (NPR); that it was the intent of

herself, the labor-management forum, and agency leadership that the agency would continue using three appraisal levels for each critical element in the 2014-15 performance cycle and beyond; that she was tasked with updating the NPR to reflect the new policy; and that she had not yet updated the NPR because other changes were also being processed and she wanted to input all the changes at the same time. Hearing Compact Disc (HCD) (testimony of the Human Resource Specialist).

¶10   The appellant also argues that the performance standards were invalid because they were not realistic, reasonable, and attainable. PFR File, Tab 3 at 18-19; *see Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013) (stating that standards must be reasonable, realistic, and attainable). We find, however, that the administrative judge's finding to the contrary is supported by the appellant's supervisor's testimony that the duties described in the performance plan were consistent with the appellant's high-level position and position description, as well as his team leader's testimony regarding the complexity and time requirements involved in the critical elements. HCD (testimony of the supervisor and the team leader).

¶11   We have considered the appellant's contention that the administrative judge "ignored" certain evidence that the critical elements were too onerous and unattainable during the time provided. *E.g.*, PFR File, Tab 3 at 18-19. We find his arguments unavailing. An administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985). Further, we find that the mere fact that an assigned task previously has not been performed by an employee or his coworkers does not establish that the task is unattainable. Similarly, evidence that the appellant was assigned more subject matter areas than a coworker does not demonstrate that the standards were unreasonable, especially when, as here, the record is devoid of evidence suggesting that the appellant's

duties, as a whole, were more difficult or time-consuming than his coworker's duties. The administrative judge considered the appellant's timeline, as well as his unsuccessful efforts to convince his supervisor that his workload was too difficult, but found that, notwithstanding this evidence, the agency had proffered substantial evidence that the standards were achievable. ID at 10-11. Having considered the record and the appellant's arguments, we agree with the administrative judge that the agency has proven by substantial evidence that the performance standards were valid. *See Jackson v. Department of Veterans Affairs*, 97 M.S.P.R. 13, ¶ 14 (2004) (holding that an agency is free to set its performance standards as high as it thinks appropriate, so long as those standards are objective and meet the other express requirements of section 4302(b)(1)).

<u>The agency afforded the appellant a reasonable opportunity to demonstrate acceptable performance.</u>

¶12　　In determining whether an agency has afforded an employee a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time which is sufficient to enable the employee to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 32. We agree with the administrative judge's finding that the agency proffered substantial evidence that it afforded the appellant a reasonable opportunity to improve in the two critical elements at issue. ID at 11-18. The appellant was a GS-15, and his position description referenced, among other things, planning, organizing and conducting ground-breaking studies, applying advanced analytical techniques, and preparing and contributing to reports and other presentations. IAF, Tab 5 at 230-31.

¶13    On review, the appellant contends that the agency failed to afford him a reasonable opportunity to improve for several reasons.[3]  First, he claims that the PIP was premature and that his performance was satisfactory prior to its issuance. *See, e.g.*, PFR File, Tab 3 at 20-21.  It is well settled, however, that an agency need only prove that the appellant failed the PIP; it need not prove unacceptable performance prior to the PIP.  *See, e.g.*, *Wright v. Department of Labor*, 82 M.S.P.R. 186, ¶ 12 (1999); *Brown v. Veterans Administration*, 44 M.S.P.R. 635, 640 (1990).  We thus find that evidence of the appellant's performance immediately preceding the PIP is immaterial to whether the agency met its burden under chapter 43.

¶14    The appellant also reasserts his claims that his supervisor modified his PIP task requirements during the regular progress meetings, thus failing to provide him with a firm benchmark toward which to aim his performance.  PFR File, Tab 3 at 22-24.  We have reviewed the referenced meeting summaries and find, however, that his supervisor's comments constituted substantive feedback designed to help the appellant produce acceptable deliverables rather than changes in the requirements of the PIP.  IAF, Tab 5 at 159-68.

¶15    We are also unconvinced by the appellant's argument that he received insufficient assistance during his PIP.  PFR File, Tab 3 at 22.  The record reflects that, during the PIP, the agency provided the appellant with detailed oral and written feedback during bimonthly meetings at which the appellant's supervisor and the appellant discussed his progress.   IAF, Tab 5 at 159-68, Tab 65.  Furthermore, the appellant testified that his team leader provided him reference materials and answered his questions as they arose.  HCD (testimony of the appellant).   We therefore find that the agency met its obligation to offer

---

[3] The appellant admitted during his hearing testimony that he did not satisfy the requirements of the PIP.  HCD (testimony of the appellant).

assistance in improving his performance.  *See Goodwin v. Department of the Air Force*, [75 M.S.P.R. 204](#), 208-09 (1997); [5 C.F.R. § 432.104](#).

¶16    Regarding the appellant's claim that his supervisor denied him training related to his dashboard task, PFR File, Tab 3 at 22, we find that the referenced training was not necessary to complete the task.  The evidence indicates that, on December 3, 2014, the appellant requested permission to attend a 3-day course on Visual Basic because he thought it would be helpful for the unit to have in-house capability to write basic code, and it would help him learn the more sophisticated functions for dashboarding available in Excel.  IAF, Tab 5 at 163, Tab 51.  In rejecting his request, the appellant's supervisor indicated that contractors would perform the coding and, thus, his focus during the PIP should be on the look and functionality of the dashboard.  IAF, Tab 5 at 163.  This was consistent with her prior instruction that he would be provided coding support as necessary.  *Id.* at 159.  Moreover, the record indicates that the appellant asked to take the course in late January, which would have been after his PIP period ended and, therefore, not helpful in completing his PIP assignments.  IAF, Tab 51.

¶17    We also considered the appellant's argument that he had insufficient time to complete his PIP tasks and find that this argument is belied by the evidence of record.  Although the appellant now claims that he could not focus on the labor-pricing studies until mid-December and his attempts at scheduling interviews was made difficult by the holiday schedules of the interviewees, PFR File, Tab 3 at 24, the notes from the appellant's regular meetings with his supervisor reveal that in mid-November, the appellant's supervisor offered to help him get responses from the labor centers and that the appellant indicated he was on target to complete the labor-pricing study by January 15—the end of his PIP, IAF, Tab 5 at 162.  On December 3 and 15, the appellant informed his supervisor that he had completed enough interviews, and he was "in good enough shape to start writing over the holidays."  *Id.* at 163-64, 166.  Finally, in a January 9 email, the appellant indicated that his only remaining PIP task was

completing the labor-pricing study, which he stated would be difficult but "doable." IAF, Tab 40 at 75. Similarly, the appellant's claim that he was forced to miss a week of work (January 5-9, 2015) during his PIP due to his wife's illness is also contradicted by the record. PFR File, Tab 3 at 24. As he explained in an email dated January 9, he worked at home that week after requesting and receiving permission from his supervisor to do so. IAF, Tab 40 at 75, Tab 77. Finally, as noted by the administrative judge, the appellant admitted that he never asked for an extension of time to complete his PIP projects. HCD (testimony of the appellant). Accordingly, we agree with the administrative judge that the appellant had sufficient time to complete his tasks. ID at 18.

The appellant failed to meet his burden of proving that his disclosures were protected under 5 U.S.C. § 2302(b)(8).

¶18        The appellant argues that the administrative judge erred in finding that he failed to prove his affirmative defense of retaliation for whistleblowing pursuant to 5 U.S.C. § 2302(b)(8). PFR File, Tab 3 at 27. To prove an affirmative defense of whistleblower reprisal, the appellant must show by preponderant evidence that he engaged in whistleblowing by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action. *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 21 (2014). A protected disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Shannon*, 121 M.S.P.R. 221, ¶ 22. To demonstrate that he had a reasonable belief that he made a protected disclosure, an appellant need prove only that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the agency's actions evidenced one of the categories of wrongdoing listed in 5 U.S.C. § 2302(b). *Shannon*, 121 M.S.P.R. 221, ¶ 22.

¶19     The appellant alleges that he made a protected disclosure in April 2014 when he notified agency management of an alleged weakness in OPM's EVS online tool and that he made a separate protected disclosure in a May 2014 email to agency management identifying statistical errors in his second-line supervisor's testimony before Congress. PFR File, Tab 3 at 6-7, 27-29. We agree with the administrative judge that the appellant did not reasonably believe that either of these disclosures evidenced one of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8). ID at 20-21.

¶20     Regarding his first disclosure, the appellant alleged that, on April 10, 2014, he told his first- and second-line supervisors that he had discovered a weakness in OPM's EVS online tool wherein, under certain circumstances, managers with access to the tool could learn the identity of certain survey respondents by conducting a series of searches with filters and comparing the results of those searches. IAF, Tab 8 at 6, Tab 10 at 88. The appellant described the alleged weakness in a subsequent email and made a recommendation that he believed would resolve the issue. IAF, Tab 10 at 88. Although the appellant testified that he was unaware of anyone who actually had used this technique, HCD (testimony of the appellant), he stated that he was concerned that one of the approximately 100 agency managers with access to the tool could learn to replicate what he had discovered and would use it in a manner that would jeopardize the confidentiality of the survey results, IAF, Tab 8 at 6. The appellant alleged that his second-line supervisor initially told him to notify OPM but later changed her mind. *Id.* He admits that this disclosure did not implicate his supervisors in any improper behavior and that they were apparently "clueless" as to the potential consequences of the alleged weakness. IAF, Tab 81 at 22.

¶21     We find no reason to disturb the administrative judge's finding that the appellant did not reasonably believe his disclosures about the EVS online tool evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). ID at 20. On review, the appellant continues to argue that his disclosure evidenced a gross

waste of funds, PFR File, Tab 3 at 27-28, but the Board's gross waste of funds analysis focuses on improper expenditures, *Embree v. Department of the Treasury*, 70 M.S.P.R. 79, 85 (1996), and the appellant failed to identify any such expenditures by the agency. To the extent that the appellant is alleging that the disclosure evidences gross mismanagement, it is well settled that gross mismanagement is more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 11 (2008). The evidence here regarding this disclosure falls short of that standard.[4] *See Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015) (holding that policy disagreements with agency decisions or actions are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in section 2302(b)(8)(A)).

¶22      We further agree with the administrative judge that the appellant has not proven that he had a reasonable belief that his disclosure about perceived weaknesses in the EVS online tool evidenced an abuse of authority. ID at 20. The Board has defined abuse of authority as an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 22 (2013). As correctly noted by the administrative judge, the appellant failed to identify who, if anyone, conducted the alleged abuse of authority related to the perceived weakness in the EVS online tool. ID at 20. On review, the appellant

---

[4] The appellant's claim that an OPM official testified that his disclosure evidenced a "very serious concern" is not supported by the record. PFR File, Tab 3 at 28; IAF, Tab 72 at 3. The transcript excerpt in the record contains no evidence that the OPM witness was asked about the appellant's specific disclosure. IAF, Tab 72 at 3. In any event, such testimony would be of insufficient weight to change the outcome.

appears to argue that his supervisors abused their authority *after* his April 10, 2014 disclosure in that they failed to notify OPM of his concerns. PFR File, Tab 3 at 28. However, the disclosure at issue in this case is the appellant's April 10, 2014 statement to his managers about the EVS online tool. There is no evidence that the appellant made a disclosure regarding his supervisors' failure to take action after that conversation and, therefore, his claim has no merit.

¶23    Regarding his second disclosure, the record indicates that, by email dated May 22, 2014, the agency's Office of Legislative and Interagency Affairs asked the appellant's office to verify the figures and information provided by his second-line supervisor as well as nonagency witnesses who testified at the May 6, 2014 congressional hearing, but noted that such substantive statements could not be altered in the record. IAF, Tab 40 at 95-96. An agency employee forwarded this email to the appellant and asked him to verify specific statements made about the EVS. *Id.* at 94-95. In his May 27, 2014 email response, the appellant noted that a certain nongovernmental witness's testimony contained some statistical errors. *Id*. at 94, 189. He also noted that his second-line supervisor stated that EVS results indicated that 13% of the agency's employees planned to retire within the next 5 years, when in fact the correct number was 23%. *Id.* at 94, 152. In a subsequent email, the appellant opined that his second-line supervisor had probably been referring to the number of agency employees who intended to retire within 3 years, which was 12.6%. *Id.* at 100.

¶24    On review, the appellant reasserts his argument that his May 27, 2014 email was protected under 5 U.S.C. § 2302(b).[5] PFR File, Tab 3 at 29. We agree with

---

[5] We also disagree with the appellant's characterizing his email as a "Congressional disclosure." PFR File, Tab 3 at 29. The appellant did not send his email to Congress. Moreover, he had no reason to believe that the information provided in his email would be disclosed to Congress because the email to which the appellant responded specifically indicated that only grammatical, typographical, and spelling errors could be changed in the remarks, not substantive remarks. IAF, Tab 40 at 95.

the administrative judge that the appellant's email did not suggest that his second-line supervisor was intentionally deceitful in her testimony and that he failed to prove that he reasonably believed his disclosure of this statistical error evidenced a category of wrongdoing set forth in 5 U.S.C. § 2302(b)(8)(A).  ID at 21.

¶25    Thus, we uphold the administrative judge's finding that the appellant failed to prove whistleblower reprisal.[6]

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you

---

[6] Because we have found that the appellant failed to prove that his disclosures were protected, it is unnecessary to decide whether the agency proved by clear and convincing evidence that it would have removed him in the absence of the disclosures. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015).  Accordingly, we vacate the administrative judge's findings concerning whether the agency met its clear and convincing burden.

may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:
http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:        _____
                                                       Jennifer Everling
                                                       Acting Clerk of the Board

Washington, D.C.